UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ERICA CARDENAS,** individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | **CLASS ACTION COMPLAINT** |
| | **DEMAND FOR JURY TRIAL** |
| *v.* | |
| **BUSINESS DEBT ADJUSTERS LLC**, a New Jersey registered company, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT

Plaintiff Erica Cardenas ("Plaintiff Cardenas" or "Cardenas") brings this Class Action Complaint and Demand for Jury Trial against Defendant Business Debt Adjusters LLC ("Defendant" or "Business Debt Adjusters") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing calls to consumers without consent including calls to phone numbers that are registered on the National Do Not Call registry ("DNC") and to consumers who have expressly requested that the calls stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Cardenas, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

1

## PARTIES

1.     Plaintiff Cardenas is a resident of Chula Vista, California.

2.     Defendant Business Debt Adjusters is a corporation registered in Englewood Cliffs, New Jersey. Defendant Business Debt Adjusters conducts business throughout this District and throughout the US, including California.

## JURISDICTION AND VENUE

3.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.     This Court has personal jurisdiction over the Defendant because the Defendant is headquartered in this District and places telemarketing calls to consumers from this District.

5.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is headquartered in this District.

## INTRODUCTION

6.     As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's

representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7.      When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8.      By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9.      The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10.     According to online robocall tracking service "YouMail," 3.8 billion robocalls were placed in December 2023 alone, at a rate of 121.6 million per day. www.robocallindex.com (last visited January 24, 2024).

11.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

13.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14.     Business Debt Adjusters provides debt resolution services to businesses that owe debts.

15.     Business Debt Adjusters places solicitation calls to businesses that may need their debt adjusted.

16.     Business Debt Adjusters is negligent when it comes to ensuring that it is calling business phone numbers and not phone numbers that belong to consumers, as per Plaintiff's experience.

17.     Current and former Business Debt Adjusters' employees have posted complaints online about the cold calls the they had to make to generate business, including complaints indicating that employees had to place up to 200 cold calls, daily. For example:

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

## Remote

Debt Consultant (Current Employee) - Remote - March 30, 2021

Remote work from home position
Lots of meetings team like setting
Cold calling averaging around 200 a day
9-5 type schedule 1 hour lunch
Lots of meetings

3

## I worked too hard to get in and in the end is trash

merchant cash advance Closer (Former Employee) - New York, NY - May 8, 2021

They will tell you that you are not going to be cold calling and there and in bound and
outbound calls and in the most part they have their own client and that's a very big lie.

You are going to be cold calling 200% of the time not only cold calling you are looking
first to see if they have cash advance then see if they're qualified or not makes it very
difficult to make a close or sale.

4

1.0 ★☆☆☆☆ ⌄                                                                Nov 6, 2023   •••

### You Mostly Likely Wont Get Paid

👤  Inside Sales Representative
    Former Employee, less than 1 year

❌ Recommend   ○ CEO Approval   ❌ Business Outlook

**Pros**
I really can't think of any.

**Cons**
You will be cold calling old leads that have been called many times before. You are expected to hit 3 hours talk time per day. This
would be manageable but they keep you in unpaid training for 3 hours per day. Out of over 30 people in my training class only a
few were on track to get a measly $300 bonus..

**Advice to Management**
Stop scamming people.

5

---

[3] https://www.indeed.com/cmp/Business-Debt-Adjusters/reviews?start=20
[4] Id.
[5] https://www.glassdoor.com/Reviews/Business-Debt-Adjusters-Reviews-E2925505.htm

18.     Unfortunately, some of these calls from Business Debt Adjusters are being placed to consumers' phone numbers without consent, including to consumers that registered their phone numbers on the DNC, as per Plaintiff's experience.

19.     To make matters worse, Business Debt Adjusters lacks a sufficient opt-out system to ensure that a consumer who notifies Business Debt Adjusters to stop calling them, will be removed from their calling list.

20.     Consumers and businesses have posted complaints online about unsolicited calls they received from Business Debt Adjusters, including complaints from consumers who received additional unsolicited calls after telling the Defendant to stop calling, including:

- "They call me daily even though I have no debt and **have asked to stop calling me. Same person calls me everyday**. I have explained I do not need any help and that **I am on the do not call registry**. LEAVE ME ALONE"[6] (emphasis added)

- "A very pushy call center that does not respect privacy or boundries. I have **requested to be taken off their call list a dozen times**. STAY AWAY!!! THESE ARE SCAMMERS!"[7] (emphasis added)

- "Called me on my cell phone over 500 times. I am not disclosing my number. I've already blocked this firm. They continue to leave me voicemails 5x per day for the last 6 months. They leave 2 minute long voicemails. My daily routine requires removing their voicemails. I guess they don't know when to give up. It's really funny because they are using live person and leaving real voicemails…"[8]

---

[6] https://www.google.com/search?q=business+debt+adjusters
[7] Id.
[8] https://www.bbb.org/us/nj/englewd-clfs/profile/debt-relief-services/business-debt-adjusters-0221-90179879/customer-reviews

21.    In response to these calls, Plaintiff Cardenas brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF CARDENAS'S ALLEGATIONS

22.    Plaintiff Cardenas is the sole owner and user of her cell phone number ending in 5615.

23.    Plaintiff Cardenas has owned her cell phone number for over 10 years.

24.    Plaintiff Cardenas registered her cell phone number on the DNC on November 9, 2023.

25.    Plaintiff Cardenas uses her cell phone number for personal use only as one would use a landline telephone number in a home. She has never had her cell phone number associated with a business.

26.    Throughout the second half of 2023 and into 2024, Plaintiff Cardenas has received unsolicited calls regarding business finance loans and credit. The callers have been asking consistently to speak to Eric Thompson.

27.    Plaintiff Cardenas does not know who Eric Thompson is.

28.    Plaintiff Cardenas received unsolicited calls specifically from Business Debt Adjusters regarding soliciting debt assistance for Eric Thompson.

29.    Plaintiff Cardenas has told the Business Debt Adjusters employees to stop calling, but the calls continued.

30.    On November 8, 2023 at 8:51 AM, Plaintiff Cardenas received an unsolicited call to her cell phone from Defendant, from 346-447-2572.

31.    When Plaintiff answered this call, she spoke to an employee who identified the company name Business Debt Adjusters. The caller was looking to speak to Eric Thompson.

32.    346-447-2572 is owned or operated by the Defendant.

33.    Plaintiff Cardenas called 346-447-2572 on November 8, 2024 at 10:38 AM to confirm who Business Debt Adjusters is and to find out why she was receiving calls for Eric Thompson. Plaintiff spoke to an employee and was told that the company name is Business Debt Adjusters. She asked for more information and was told that Defendant is located in New Jersey.

34.    Plaintiff explained that Defendant was calling the wrong number.

35.    Due to all the unsolicited calls she was receiving, Plaintiff registered her cell phone number on the DNC on November 9, 2023.

36.    Plaintiff Cardenas received another unsolicited call from Business Debt Adjusters on January 18, 2024 at 8:09 AM from 916-993-5691.

37.    When Plaintiff answered this call, an employee stated that they were calling from Business Debt Adjusters. The purpose of the call was to provide business debt solutions.

38.    916-993-5691 is owned or operated by the Defendant.

39.    On January 22, 2024 at 11:16 AM, Plaintiff Cardenas received an unsolicited call to her cell phone from Business Debt Adjusters, from phone number 661-414-0649.

40.    When Plaintiff answered this call, an employee stated that they were calling from Business Debt Adjusters. The purpose of the call was to provide business debt solutions.

41.    661-414-0649 is owned or operated by the Defendant.

42.    Plaintiff Cardenas received at least 2 unsolicited calls from Defendant Business Debt Adjusters more than 31 days after she registered her cell phone number on the DNC.

43.    Plaintiff Cardenas has never done business with Business Debt Adjusters.

44.    The unauthorized solicitation telephone calls that Plaintiff received from or on behalf of Defendant Business Debt Adjusters have harmed Plaintiff Cardenas in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

45.    The calls also caused undue distress as Plaintiff was unable to get the calls to stop by asking Business Debt Adjusters to stop calling her cell phone number.

46.     Seeking redress for these injuries, Plaintiff Cardenas, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

47.     Plaintiff Cardenas brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Business Debt Adjusters called and/or texted more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Business Debt Adjusters called or texted more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the person requested that they stop calling/texting.

48.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and

(6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Cardenas anticipates the need to amend the Class definition following appropriate discovery.

49.     **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

50.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)     Whether Defendant's conduct violated the TCPA;

(b)     Whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(c)     whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d)     whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

51.     **Adequate Representation**: Plaintiff Cardenas will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Cardenas has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Cardenas and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Cardenas nor her counsel have any interest adverse to the Classes.

52.     **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Cardenas. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's

misconduct on an individual basis. A class action provides the benefits of single

adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Cardenas and the Do Not Registry Class)**

53.     Plaintiff repeats and realleges the prior paragraphs of this Complaint

and incorporates them by reference herein.

54.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c),

provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a]

residential telephone subscriber who has registered her or his telephone number on

the national do-not-call registry of persons who do not wish to receive telephone

solicitations that is maintained by the federal government."

55.     Any "person who has received more than one telephone call within any

12-month period by or on behalf of the same entity in violation of the regulations

prescribed under this subsection may" may bring a private action based on a

violation of said regulations, which were promulgated to protect telephone

subscribers' privacy rights to avoid receiving telephone solicitations to which they

object.  47 U.S.C. § 227(c).

56.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to

be initiated, telephone solicitations to telephone subscribers such as Plaintiff

Cardenas and the Do Not Call Registry Class members who registered their

respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

57. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Cardenas and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

58. As a result of Defendant's conduct as alleged herein, Plaintiff Cardenas and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

59. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## SECOND CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Cardenas and the Internal Do Not Call Class)**

60. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

61. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such

person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900

number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

62.     Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

63.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

64.     Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of

Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Cardenas requests a jury trial.

DATED this 13th day of February, 2024.

ERICA CARDENAS, individually and on behalf of all others similarly situated,

By: /s/ *Stefan Coleman*
Stefan Coleman
law@stefancoleman.com
Coleman PLLC
1072 Madison Ave, Suite 1
Lakewood, NJ 08701
Telephone: (877) 333-9427

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*

* *Pro Hac Vice motion forthcoming.*

*Attorney for Plaintiff and the putative Classes*